IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AISHA WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. No. **4:16-cv-02802** |
| V. | § | |
| | § | |
| Union Pacific Railroad Company, | § | |
| | § | |
| Defendant. | § | (JURY TRIAL DEMANDED) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff Aisha Wright, filing her Original Complaint complaining of Defendant, Union Pacific Railroad Company (initially named incorrectly), and in support thereof would show as follows:

### I.   JURISDICTION, PARTIES AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant 28 U.S.C. §1331 and §1332, Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and 42 U.S.C. §1981 ("Section 1981"), and the related anti-retaliation regulations set forth by Title VII and Section 1981.

2. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a) to hear and decide claims arising under state law including Plaintiff's claims set forth pursuant to Texas Labor Code 21.001 *et. seq*.

3. Plaintiff Aisha Wright ("Ms. Wright" or "Plaintiff") resides in Harris County, Texas. Ms. Wright is a female, African-American, individual who is 48 years old. Ms. Wright is protected by TCHRA, Title VII and 42 U.S.C. §1981. At all times relevant to the facts stated herein, Ms. Wright was an employee within the meaning of the applicable statues.

1

4.      Defendant, Union Pacific Railroad Company may be served with this Original Complaint by and through its counsel of record, Attorney-in-Charge, Linda Schoonmaker, Seyfarth Shaw LLP, 700 Milam Street, Suite 1400, Houston, Texas 77002.

5.      At all times relevant to the facts set forth in this Original Complaint, Defendant engaged in an industry affecting commerce and employed more than fifteen (15) regular employees.

6.      Defendant resides within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

## II.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      Ms. Wright filed an original Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") and Texas Workforce Commission ("TWC") on or about August 4, 2015 wherein she averred that Defendant failed to promote her to a Claims Adjuster position for which she applied based on her race (African-American), gender (female), and/or age (46 at the time of Plaintiff's application). In her Charge, Ms. Wright also averred that Defendant retaliated against for complaining about its unlawful discrimination toward her. The EEOC assigned Ms. Wright's Charge the No. 846-2015-25827.

8.      After investigating Ms. Wright's Charge, the EEOC issued Ms. Wright a Right-to-Sue letter on or about May 26, 2016. *Pro se*, Ms. Wright filed her lawsuit in state court within the statutory limitations period on August 26, 2016.[1]

9.      Still *pro se*, Ms. Wright initiated a <u>second</u> Charge of Discrimination ("Second Charge") against Defendant with the EEOC and TWC on or about August 15, 2016 because of Defendant's continued discrimination against her, continued harassment and retaliation against her

---

[1] Defendant removed Plaintiff's case from state court on September 16, 2016 based on the diversity between the parties. *See* Dkt #1.

2

and for Defendant's termination/disqualification of her position as Claims Representative on March 8, 2016.

10. The EEOC assigned Ms. Wright's Second Charge No. 31C-2017-00051 and the TWC assigned it to No. 1A17083.

11. The TWC issued Ms. Wright a Right-to-Sue letter based on her Second Charge on March 10, 2017. By this pleading, Ms. Wright amends her lawsuit against Defendant to include the claims set forth in her Second Charge into this lawsuit within the statutory limitations period.

### III. FACTUAL BACKGROUND

12. Defendant, Union Pacific Railroad Company, headquartered in Omaha, Nebraska boasts about being the largest railroad network in the United States with more than 46,500 employees and 8,000 locomotives.

13. Plaintiff, Aisha Wright, an extraordinarily hardworking and ambitious individual, began working as a Crew Management System (CMS) Specialist for Southern Pacific Lines Railroad in Omaha, Nebraska in 1994. Southern Pacific Lines Railroad merged with Defendant sometime in 1996, and Defendant became Ms. Wright's employer more than twenty years ago.

14. As a CMS Specialist for Defendant, Ms. Wright was responsible for dispatching trains by adhering to Defendant's labor agreements and computer-assisted calling procedures. Ms. Wright performed this position successfully and without issue for more than 15 years.

15. Seeking growth, Ms. Wright applied for and was awarded a position in Defendant's Fort Worth, Texas location as a material handler in 2012. She handled various materials, operated various heavy vehicles, and processed and prepared documents used to account for the materials she handled.

16. Approximately a year later—seeking to again improve her position within the company and increase her income—Ms. Wright applied for and was awarded the Claims Trainee Position C22002139, located in Defendant's Palestine, Texas office.

17. As a Claims Trainee, Defendant assigned Ms. Wright to work under the Shipment Quality Freight Claims Manager, Damian Vaesa (Latino, male),

18. During Ms. Wright's orientation and training, she worked closely with Mr. Vaesa who was intricately involved with the evaluation and resolution of most claims.

19. Within a few weeks of working closely under Mr. Vaesa's tutelage, Mr. Vaesa told Ms. Wright that she should shadow Claims Adjuster V. Howard because she was "a fast learner" and that Ms. Wright could "replace Ms. Howard when she retired." Upon information and belief, Ms. Howard was in her early to mid-60s when Ms. Wright first started working with her, and it was believed that she would soon retire.

20. Around that same time, office Director Don Bartula also told Ms. Wright that Defendant's Palestine location promoted their representatives based on their seniority within the Palestine office.

21. Ms. Wright was excited and encouraged by the information that Mr. Bartula provided to her and also because of Mr. Vaesa's acknowledgement of her good work performance. Moreover, Ms. Wright did seek Ms. Howard's guidance as Mr. Vaesa had directed her to do.

22. As expected, Ms. Wright continued to learn her job well, and Mr. Vaesa told her so.

23. In or about October 2013, Defendant hired another Claims Trainee, Alice Jordan, a Caucasian female, younger than Ms. Wright.

24. Mr. Vaesa directed Ms. Wright to train Ms. Jordan with certain aspects of the Claim Representative job. Ms. Wright complied.

4

25. By December 2013, Ms. Wright had successfully passed Defendant's training requirements and Defendant promoted Ms. Wright from Claims Trainee to Claims Resolution Representative.

26. Initially (from approximately January 2014 – April 2014) Defendant assigned Ms. Wright to work on low-value claims. By approximately April 2014, Defendant had moved Plaintiff to its more difficult, higher-value claims. Mr. Vaesa remained Ms. Wright's direct supervisor.

27. Around this same time, one of Defendant's claims adjusters died and a claims adjuster position within Defendant's Palestine, Texas office became available.

28. Both Ms. Wright and Ms. Jordan—*who had not finished her training probationary period*—applied for the Claims Adjuster position yet Defendant awarded the position to Ms. Jordan over Ms. Wright.

29. Because Ms. Wright was more senior to Ms. Jordan, more experienced than Ms. Jordan, and more qualified than Ms. Jordan for the Claims Adjuster job, Ms. Wright reasonably believed that race played a part of Defendant's decision to promote Ms. Jordan over her.

30. By this time, Ms. Wright had also begun to notice that Mr. Vaesa (who seemed to have gotten overly personal and comfortable with her) would often engage in unprofessional chatter with her during work meetings.

31. Mr. Vaesa would complain to Ms. Wright about other employees in the claims department. It was not unusual for Mr. Vaesa to refer to women in their department as "bitches" and he often referred to four specific Claims Adjusters (V. Howard, B. Laurence, C. Lingo and/or J. Ramirez) who, upon information and belief, were all over 60 as "old Cadillacs."

32. Mr. Vaesa would tell Ms. Wright things like, "they need to get rid of these old Cadillacs." and "I can't wait until they retire."

5

33. In fact, in mid-April 2014, following an unusually contentious disagreement concerning a claim involving Claims Adjuster. Lingo, Mr. Vaesa referred to Ms. Lingo as an old funky bitch after Director Don Bartula had sided with Ms. Lingo's evaluation of a claim.

34. On another occasion, in response to Ms. Wright's question about a food order, Mr. Vaesa told Ms. Wright that he didn't like his steak burnt, he liked it "medium like her," a remark that Ms. Wright viewed as inappropriate, unprofessional, sexual and racist.

35. This was typical of the type of environment that Ms. Wright was subjected to working with and under Mr. Vaesa's supervision during 2014.

36. As a result, by September 2014 Ms. Wright had begun to experience bouts of anxiety at work because of the toxic environment Mr. Vaesa's conduct had created for her.

37. Besides his use of foul language and discriminatory slurs, Mr. Vaesa would also often encourage Ms. Wright to stay away from certain employees like C. Lingo. He encouraged division between some of the employees. Mr. Vaesa would tell Ms. Wright that if she did not stay away from certain employees and "watch herself" she would not be promoted.

38. This statement scared Ms. Wright and she told Mr. Vaesa so. She told him that she did not like the comments he made to her about women and about the older workers in the office and she told him that she did not want to be involved in the "office politics." She simply wanted to do her job and continue on the career path she had set out to achieve by transferring to the Palestine, Texas location.

39. In response, Mr. Vaesa reiterated that Ms. Wright's loyalty should lie with him if she wanted to succeed and be promoted.

40. In December 2014, another Claims Adjuster position became available and Ms. Wright applied for it again. This time, Defendant selected a less experienced Caucasian female in her 30s over Ms. Wright.

6

41. Based on the continuous discriminatory comments by Vaesa related to gender and age, Ms. Wright's complaints to Mr. Vaesa about such, the promotion of two inexperienced Caucasian employees over her, and Ms. Wright's qualification for the Claims Adjuster position, Ms. Wright reasonably believed that the real reason that Defendant did not select her for the promotion to Claims Adjuster was based on her gender, age, and/or race instead of her qualifications.

42. Accordingly on or about January 1, 2015, Ms. Wright made an internal complaint to Defendant's EEO office about the discrimination to which Mr. Vaesa had been subjecting her.

43. Ms. Wright also told Defendant that it had become mentally distressing and hostile for her to work under Mr. Vaesa and that she believed that he did not support her application for the Claims Adjuster position because of her complaints to him and about him.

44. For these reasons and based on Mr. Vaesa's past comments and threats, Ms. Wright told Defendant's HR personnel that she feared for her job and her safety continuing to work under Mr. Vaesa.

45. In response, Defendant moved Ms. Wright from under Mr. Vaesa's supervision to Director Don Bartula's supervision. This move, however, was only temporary.

46. Less than three months later and without resolution of Ms. Wright's EEO complaints, Defendant told Ms. Wright that she would have to resume reporting to Mr. Vaesa on March 23, 2015.

47. From the very beginning of her reassignment to Mr. Vaesa, Mr. Vaesa harassed Ms. Wright terribly. For the first time ever, Mr. Vaesa started finding issue with Ms. Wright's work performance.

48. On June 23, 2015, just 60 days after Vaesa regained his ability to discipline Ms. Wright, he did. Mr. Vaesa issued Ms. Wright her first disciplinary action *ever* for poor performance since transferring to Defendant's Palestine location in June 2013.

49. In response, Ms. Wright complained to new office Director Johnny Boyd that Mr. Vaesa was retaliating against her for her complaints against him. Boyd said he would speak to Mr. Vaesa about Ms. Wright's concern.

50. Less than 60 days after Ms. Wright's complaint of retaliation to Mr. Boyd, Mr. Vaesa wrote Ms. Wright up again on August 20, 2015.

51. Overwhelmed, anxious, and physically and emotionally depleted as a result of Mr. Vaesa's harassment and obvious retaliation against her, Ms. Wright passed out the next day at work and had to be taken to the hospital by ambulance.

52. Due to anxiety and other medical problems caused by Mr. Vaesa's hostility toward her, Ms. Wright remained off of work from August 21, 2015 until early December 2015 when she was released to return.

53. After returning to work, Union representative Williams and Ms. Wright had a verbal disagreement related to the Union's non-action on her EEO complaints. During their conversation, Mr. Williams began pointing his finger in Ms. Wright's face. In response, Ms. Wright asked that Mr. Williams leave her office space but he refused.

54. Feeling threatened by Mr. Williams' unwanted presence and display of physical aggression toward her, Ms. Wright resorted to the ladies restroom where she telephoned a friend for guidance. Next she called Defendant's onsite police who directed her to go home for the day.

55. The next day, on or about December 16, 2015, Defendant telephoned Ms. Wright and told her that she could not return to work until she had completed a fit for duty examination.

56. Using this decoy, Defendant kept Ms. Wright off of work until late February 2016 without pay.

57. Upon successfully completing the fit for duty examination and returning to work on or about February 22, 2016, Defendant reassigned Ms. Wright to work under Mr. Vaesa's supervision.

58. Within two weeks of Ms. Wright's return to work, Mr. Vaesa recommended that Ms. Wright be disqualified/terminated from her position for poor performance.

59. Defendant complied and disqualified Ms. Wright from her Claims position on March 8, 2016 despite Ms. Wright's numerous complaints about Mr. Vaesa and her solid work performance prior to her complaints.

60. Defendant also ordered its campus police officers to escort Ms. Wright off of its premises. In other words, on March 8, 2016 Ms. Wright lost her position and job location with Defendant based on Mr. Vaesa's recommendation, *and* Defendant humiliated her.

61. Ms. Wright was only able to maintain her employment with Defendant because she is a union member with bumping rights which allowed her to secure another position within Defendant's company.

62. However, this other position which Ms. Wright was bumped into has totally taken her off of her career path, it is a demotion, it is physically exhausting and it pays less than the position Defendant disqualified her for and the Claims Adjuster position Defendant should have promoted her to since April 2014.

63. Plaintiff now brings this lawsuit against Defendant pursuant to the Texas Commission on Human Rights Act, Title VII and Section 1981 based on the acts and/or omissions of Defendant in discriminating and retaliating against her as described herein.

64. <u>Vicarious Liability Respondeat Superior</u>: Whenever in this pleading it is alleged that Defendant did any act or thing, or failed to do any act or thing, it is meant that Defendant's officers, owners, servants, employees, or representatives including but not limited to Damian Vaesa, Don Bartula, Johnny Boyd, Kathleen Nicolini, Pete Jeyaram, Polly Harris, and other individuals within Defendant's human resource and/or management team did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment with Defendant Union Pacific Railroad Company, or in the furtherance of Defendant's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendant, or was done by an authorized member of management of Defendant Union Pacific Railroad Company or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendant Union Pacific Railroad Company, it's officers, owners, servants, employees, and/or representatives.

## IV. CAUSES OF ACTION

**A.** **<u>RETALIATION PURSUANT TO TCHRA, TITLE VII AND 42 U.S.C. §1981</u>**

65. Plaintiff repeats and re-alleges the allegations contained in the paragraphs 7 through 64 above and incorporates the same by reference as though fully set forth herein.

66. After complaining to management of maltreatment and discrimination, Defendant subsequently and repeatedly harassed, ignored, disciplined, and ultimately disqualified Plaintiff from her employment as a Claims Representative.

67. As alleged herein, Defendant illegally retaliated against Plaintiff because she complained of maltreatment, discrimination and retaliation. Defendant had no legitimate business reasons for any of its retaliatory acts, including but not limited to the disqualification of Plaintiff from her Claims position in March 2016.

68. Each of Defendant's acts of retaliation are in violation of TCHRA, Title VII and 42 U.S.C. §1981's anti-retaliation provisions.

69. As a direct and proximate result of Defendant's willful, knowing, intentional and/or reckless discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is entitled to general and compensatory damages in amounts to be proven at trial. Plaintiff is also entitled to punitive damages based on Defendant's recklessness and malice.

**B.    RACE DISCRIMINATION PURSUANT TO TCHRA, TITLE VII AND 42 U.S.C. §1981**

70. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs 7 through 64 above and incorporates the same herein as though fully set forth.

71. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of TCHRA, Title VII and 42 U.S.C. §1981 by intentionally interfering with Plaintiff's employment because of her race (African-American).

72. This intentional interference consisted of discrimination of a continuous nature.

73. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff, which led to the loss and impairment in whole or part, of the ***wages, benefits***, ***promotions***, ***privileges, opportunities and/or terms and conditions*** of Plaintiff's employment.

74. Specifically, in April 2014 and again in December 2014, Defendant intentionally and unlawfully failed to promote Plaintiff into a position that she was applied for and was most qualified to fill based on her race. Further, Defendant imposed different qualification standards on Plaintiff for the position than it imposed on Plaintiff's Caucasian counterparts. In other words, Defendant subjected Plaintiff to disparate treatment based on race.

75. The above-described acts on Defendant's part were committed with actual malice

11

and/or in reckless disregard of Plaintiff's state and federally protected civil rights. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

76. Defendant also disqualified Plaintiff from her Claims Representative position, in large part, because of her race (black). In disqualifying Plaintiff from her Claims Representative position, Defendant subjected Plaintiff to disparate treatment. This treatment by Defendant was committed with actual malice and/or in reckless disregard of Plaintiff's state and federally protected civil rights.

77. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

C. **GENDER DISCRIMINATION PURSUANT TO TITLE VII**

78. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs 7 through 64 above and incorporates the same herein as though fully set forth.

79. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII by intentionally interfering with Plaintiff's employment and employment opportunities because of her gender (female).

80. This intentional interference consisted of discrimination of a continuous nature.

81. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff based on her gender, which led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

82. The above-described acts on Defendant's part were committed with actual malice and/or in reckless disregard of Plaintiff's state and federally protected civil rights.

D. **AGE DISCRIMINATION PURSUANT TO TCHRA AND THE ADEA**

83. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs 7 through 64 above and incorporates the same herein as though fully set forth.

84. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII by intentionally interfering with Plaintiff's employment and employment opportunities because of her age.

85. This intentional interference consisted of discrimination of a continuous nature.

86. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff based on her age, which led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

87. The above-described acts on Defendant's part were committed with actual malice and/or in reckless disregard of Plaintiff's state and federally protected civil rights.

## V.   JURY DEMAND

88. Plaintiff requests that this action be heard before a jury.

## VI.   DAMAGES

89. Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affected Plaintiff in her occupation. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer financial loss, humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

90. Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in these causes of action. Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes,

and further for any appeal thereof should same become necessary.

91. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

92. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

## VII. PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of race, gender, age, and/or protected complaints.

b. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any amendment hereto.

Respectfully submitted,

The Murphy Law Practice, PLLC

/s/ *Marjorie A. Murphy*
_____
Marjorie A. Murphy
Attorney-in-Charge
State Bar No. 24013218
Federal Bar No. 34512
3355 W. Alabama, Ste. 670
Houston, Texas  77098
Telephone:  (832) 564-3804
Facsimile:  (832) 553-7441
Email: marjorie@themurphylawpractice.com

**ATTORNEY FOR PLAINTIFF**
**AISHA WRIGHT**

## **CERTIFICATE OF SERVICE**

  I hereby certify on March 17, 2017, the foregoing **Original Complaint** was filed pursuant to the electronic filing guidelines set forth by the United States District Court for the Southern District of Texas, Houston Division and that service will be further made in compliance with such guidelines to:

Doris A. Beutel-Guthrie
801 Louisiana Street, Suite 300
Houston, Texas 77002

Linda Schoonmaker
SEYFARTH SHAW, LLP
700 Milam Street, Suite 1400
Houston, Texas 77002

**ATTORNEYS FOR DEFENDANT**

             */s/ Marjorie A. Murphy*
             _____
             Marjorie A. Murphy